UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:                                                                                       Case Number: 17-10960-7

    CHRISTINE M. SIEVERT,

        Debtor.

---

### **DECISION**

Upon the consent of the parties and in recognition that no facts are in dispute, this contest over the Debtor's claim to an amended exemption in a personal injury award is submitted on briefs. The facts are summarized below. Sievert saw a TV ad about a possible lawsuit against Essure and sent an email in response to the ad. In the fall of 2016 she completed an application to employ a law firm to represent her in that lawsuit. She did not disclose this asset. After receiving a discharge, her case was closed. About 3-1/2 years later, her case was reopened. Then she filed an amendment to exempt any recovery from this claim. The Trustee objected. For the reasons stated, the Trustee's objection is SUSTAINED.

### **FACTUAL BACKGROUND**

Sievert filed a voluntary chapter 7 petition and schedules[1] in March 2017. She received a discharge in July of that year.[2] She did not disclose the personal injury claim at any time before her discharge. In late 2017, Sievert

---

[1] Case No. 17-10960, ECF No. 1.

[2] ECF No. 16.

received notice that a lawsuit against Essure was filed in California and that she was part of it. She took no action to report this to her attorney, the Court, or the Trustee, Parrish Jones ("Jones").

Jones learned about the lawsuit in February 2021. He received a letter telling him that a settlement in the lawsuit had been reached and asking whether the funds would be claimed as part of the bankruptcy estate.[3] The United States Trustee ("UST") moved to reopen the case and appoint a trustee because of this previously undisclosed asset.[4] The motion was granted.[5]

Five months later, Sievert amended her Summary of Assets and Liabilities, Schedule A/B, and Schedule C to disclose the lawsuit for the first time.[6]

Jones objects to Sievert's claim of exemption as untimely.[7] He argues Sievert retained counsel for the personal injury suit before filing bankruptcy and did not include the suit in her schedules. Jones also points out that Sievert answered "No" to the question on her Schedule A/B regarding "Claims against third parties, whether or not you have filed a lawsuit or made a

---

[3] ECF No. 28-1.

[4] ECF No. 19.

[5] Order granting motion to reopen, ECF No. 21; Notice of appointment of trustee, ECF No. 22. The trustee also applied to employ the attorney representing Sievert in the personal injury action, ECF No. 24. The employment was approved by the Court, ECF No. 26.

[6] ECF No. 27.

[7] ECF No. 28.

demand for payment. *Examples:* Accidents, employment disputes, insurance claims, or rights to sue." Since Sievert retained counsel before filing her bankruptcy, Jones argues she cannot show she was not on notice of any right to sue, injury, defect, or damage before or throughout the bankruptcy. Further, Jones notes that there was substantial delay between the reopening of her bankruptcy and the date on which she filed the amendments. So he concludes Sievert should not be allowed to amend her schedules to exempt any award from her personal injury suit against Essure.

Sievert says she did not know she had a claim. Nor did she think she had retained counsel for the personal injury claim by sending an email in response to a TV ad. But she does not explain having signed a retainer agreement in connection with the lawsuit. No explanation for the failure to report the lawsuit in late 2017 has been provided. Nor does she explain the reason for a four-month delay in amending the schedules. She simply says her previous experience with personal injury lawsuits was very different. She says she did not intentionally fail to disclose the lawsuit. Based on her experience and what she believed, she says her failures should constitute "excusable neglect" and she should be allowed to amend her schedules to disclose and exempt the claim.

### APPLICABLE RULES

**Fed. R. Bankr. P. 1009**

    **(a) General Right to Amend.** A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed. The debtor shall give

notice of the amendment to the trustee and to any entity affected thereby. On motion of a party in interest, after notice and a hearing, the court may order any voluntary petition, list, schedule, or statement to be amended and the clerk shall give notice of the amendment to entities designated by the court.

**Fed R. Bankr. P. 9006**

   **(b) Enlargement.**

   **(1) *In General.*** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

### JURISDICTION

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334(a). Matters involving the administration of the estate and resolution of objections to exemptions are core proceedings. The matters arise directly from Sievert's bankruptcy and from the Code. 28 U.S.C. § 157(b)(2)(A), (B).

### DISCUSSION

Filing a bankruptcy petition creates an estate. It includes all of the debtor's property. 11 U.S.C. § 522(b)(1). To claim exemptions in property, debtors must list such property, as well as the amount of and the basis for the exemption, on their Schedule C that is required to be filed within 14 days of the filing of their bankruptcy petition. *See* Fed. R. Bankr. P. 1007(b)(1)(A), (C). And

4

debtors may amend such schedules "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a).

Bankruptcy schedules filed with a court are prepared and signed under penalty of perjury. A debtor has duties imposed by the Code. 11 U.S.C. § 521. Among a debtor's duties is the duty to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties." 11 U.S.C. § 521(a)(3). In a chapter 7, the duties of a trustee include the duty to "collect and reduce to money the property of the estate" and "investigate the financial affairs of the debtor." 11 U.S.C. § 704(1), (4).

At issue is the Debtor's claim of exemption in the settlement proceeds from a pre-petition personal injury claim under the applicable Wisconsin law. Jones does not dispute that the settlement proceeds fall within the scope of the Wisconsin exemption statute. Rather, his objection is based on his interpretation of the case-closure language in Federal Rule of Bankruptcy Procedure 1009(a) to mean that Sievert cannot, automatically, amend her claim of exemptions after the case was originally closed—even though the case has been reopened.

Generally, debtors may amend their schedules "at any time before the case is closed." Fed. R. Bankr. P. 1009(a). While some courts have found that the rule does not distinguish between an open case and a reopened case, others have determined such distinction does exist.

Courts take three approaches to this issue. The approaches turn on how the Federal Rules of Bankruptcy Procedure ("Rules") are interpreted. The

5

strictest approach imposes an absolute bar on certain amendments in reopened cases. The broadest approach applies Rule 1009(a) equally to open or reopened cases. The middle approach applies Rule 9006(b)(1). Both parties' submissions address the standard used in the middle approach.

Finding a debtor can never amend schedules once a case is closed would ignore the duties imposed on a debtor by the Code to disclose assets. Finding a debtor has an unfettered right to amend in a reopened case renders the phrase "any time before the case is closed" meaningless. Thus, the appropriate reading is that Rule 1009 no longer controls once a case is closed.

When a case is closed, the liberal right to amend ends by the plain language of Rule 1009(a). *See In re Barlett*, 326 B.R. 436, 438-39 (Bankr. N.D. Ind. 2005). And while some courts have interpreted the phrase broadly, drawing no distinction between an open case and a reopened case, "[s]uch a circular interpretation would render the rule's limitation completely illusory and, therefore, meaningless." *Id.* at 439. It is true that nothing in Rule 1009 prohibits amendments to schedules in reopened cases. But the lack of any reference to such a circumstance must not be equated with some tacit approval by the legislature. "If the drafters had wanted to allow amendments [as a matter of course] 'at any time,' 'at any time the case is open,' or 'unless the case is closed,' they would have said so." *Id*. Unless this Court is to ignore the plain language of Rule 1009, the Debtor's right to amend her Schedule C automatically ended when this case closed on July 14, 2017.

This Court is persuaded by the reasoning of the courts that apply the middle approach and holds that Rule 9006(b)(1) governs the ability of a debtor to amend schedules in a reopened case. Debtors do not have an absolute right to amend schedules in reopened cases but may amend if the debtor shows "excusable neglect" as provided by Rule 9006(b)(1). *See In re Awan*, Case No.13-71508, 2017 WL 4179816 (Bankr. C.D. Ill. Sep. 20, 2017); *In re Poulette*, 493 B.R. 729 (Bankr. D. Md. 2013); *In re Benjamin*, 580 B.R. 115 (Bankr. D.N.J. 2018); *Moretti v. Bergeron (In re Moretti)*, 260 B.R. 602 (B.A.P. 1st Cir. 2001). Courts using the middle approach find the phrase "before the case is closed" renders Rule 1009 inapplicable in reopened cases and Rule 9006(b)(1) to be the appropriate standard for determining whether such amendments should be allowed.

So the Court must consider whether Rule 9006(b)(1) provides a standard through which Sievert can amend schedules in a reopened case. This Rule permits the Court, for cause shown, discretion to permit an act to be done "where the failure was the result of excusable neglect." Rule 9006(b)(1).

Excusable neglect is not defined in the Code. The Supreme Court has opined:

> [B]ecause Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,' we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.

*Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Court further noted relevant circumstances include:

7

>the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.* "These factors are not exclusive, and the standard is a 'totality of the circumstances' inquiry that does not require a rigid, elemental application of each factor." *In re Wilmoth*, 412 B.R. 791, 797 (Bankr. E.D. Va. 2009). Although *Pioneer* related to late-filed proofs of claim, these considerations have also been applied to amended schedules in a reopened case. *See In re Libbus*, Case No. 15-05128, 2018 WL 1470513, at *4 (Bankr. E.D.N.C. Mar. 23, 2018); *Bryant v. Smith (In re Gantt)*, No. 96-1721, 1998 WL 416798, at *3-4 (4th Cir. July 22, 1998) (per curiam). Although not dispositive, both parties appear to agree that this is the standard at issue.

The middle ground approach balances the rights of the debtor with the obligations of the debtor. A debtor has a duty to disclose and assist the trustee in efforts to repay creditors. 11 U.S.C. § 521. This is a continuing duty. In exchange for this the debtor gets a fresh start. The benefits of bankruptcy must be balanced against the obligations imposed.

Applying these factors to the case before this Court, Sievert has not established excusable neglect. She did not request an extension of time to amend her schedules. She did not disclose the claim before it was discovered by Jones. Then she waited more than four months to file amendments.

She was aware of her injury. She communicated with and then hired a law firm in connection with the claim. Signing the employment contract,

8

Sievert agreed to advise her bankruptcy counsel and the bankruptcy trustee of the potential or actual claim and provide the firm (that she employed for the personal injury claim) with a copy of the bankruptcy petition.[8] The acknowledgment she signed says:

> Client acknowledges and understands that once a Bankruptcy Petition is filed, the claim most likely will be included in the bankruptcy estate and entirely subject to the Bankruptcy Trustee's and/or Bankruptcy Court's control.

ECF No. 24, n.1 at 2.

She failed to include the existence of the claim or right to sue in her schedules. She continued the failure to disclose the claim after receiving communication about the lawsuit in late 2017. She signed a settlement statement on August 27, 2020, but still failed to disclose the claim. When the claim surfaced, she continued to ignore her duty of disclosure for almost four months. The totality of these circumstances are what the Court must consider in evaluating Sievert's claim of excusable neglect.

There is no danger of prejudice to Sievert. She had many chances to disclose and amend. She did not do so until well after her omission was discovered.

The length of delay, the many opportunities for disclosure that were ignored, and the potential effect on judicial proceedings weighs against Sievert. Sievert argues she did not know of her claim during her bankruptcy and only became aware in late 2017. Her argument is unavailing. She was aware she

---

[8] ECF No. 24 at 2.

9

was injured and she was represented by counsel in her bankruptcy. Sievert did not act to remedy this omission when she received communication in late 2017. Nor did she act to remedy the omission when she signed the settlement statement in August 2020. Further, even after the UST moved to reopen the case, Sievert did not amend her schedules until July. These delays and failures to act are unexplained. During this four-month delay, Sievert was aware the asset was part of the bankruptcy estate and took no steps to exempt it.

The reason for the delay also weighs against Sievert. Sievert asserts she was not aware she had a personal injury claim until after her bankruptcy was closed. Once again, the issue with this, even accepting that she was not aware she had retained counsel for the personal injury action, is three-fold. First, she was definitively aware of the injury she sustained by the Essure tubes and generally aware of a potential lawsuit against Essure. Second, she was represented by counsel in her chapter 7—and she should have learned about what assets or potential claims needed to be listed on the schedules. Such disclosure does not require that a debtor know the ins and outs of what a claim is or what constitutes property of the estate. Finally, shortly after her discharge she knew she was part of a lawsuit, she agreed to tell her bankruptcy attorney, and she signed a settlement agreement, but at each turn she failed to disclose.

Sievert's asserted lack of legal knowledge does not render the omission excusable neglect. Debtors are generally responsible for acts and omissions of their counsel. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993). Moreover, no explanation has been provided explaining why

10

Sievert did not correct this upon receiving communication from the firm in 2017 or upon signing the settlement statement in 2020 or why it took four months after the case was reopened to amend the schedules to "disclose" and simultaneously exempt the asset. Nothing in the record before the Court reveals circumstances outside the reasonable control of Sievert. There were multiple points in time when Sievert had the chance to disclose the claim. She did not.

The failure to schedule the asset or to amend until after the independent discovery of the claim raises an additional consideration in support of denial of the amendment. In addition to property interests owned on the date the bankruptcy is filed, under section 541 of the Code any "interest in property that the estate acquires after the commencement of the case is property of the estate." 11 U.S.C. § 541(a). This includes "every conceivable interest of the debtor, future, non-possessory, contingent, speculative, and derivative." *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). So even if Sievert was unaware of the existence of the claim on the day she filed bankruptcy, she had a continuing duty to disclose the interest when she says she learned about it.

The parties did not discuss judicial estoppel. Nor does this Court feel it necessary to perform a traditional analysis of judicial estoppel. The principles and function of the doctrine, however, are instructive in this case. It is intended to prevent perversion of the judicial process. *In re Cassidy,* 892 F.2d 637, 641 (7th Cir. 1990).

"Estoppel does not eliminate a claim or defense, but only prohibits a particular party from asserting it." *Id.* at 642. Since "[e]stoppel is an equitable concept, . . . its application is therefore within the court's sound discretion. It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake . . . ." *Id.* (internal citations and quotations omitted).

Sievert failed to disclose the claim. She maintained in the lawsuit she had a claim and now wants to change her position in this Court so that she can keep the benefits of the claim. Her position today is inconsistent with her lack of disclosure either in the original schedules or in the years since. It was only when the claim was independently discovered and pursued that she belatedly filed amendments. It was not the result of mistake or inadvertence. *See New Hampshire v. Maine*, 532 U.S. 742, 753 (2001) (noting that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake").

The importance of disclosure and truthfulness in bankruptcy proceedings are highlighted by the facts here. If Sievert was really making an honest effort, she would have used one of the many chances she had to disclose the claim and assert an exemption. Instead she took no action until after the trustee discovered the claim, reopened the case, and hired counsel. The application to employ counsel attached the settlement agreement Sievert had signed. Even then she waited months before disclosing the claim and asserting an exemption. Her excuses that she lacked legal experience or didn't

understand are unconvincing. The suggestion that the months-long delay in amending the schedules was due to the need for Sievert or her attorney to verify or confirm the existence of the claim are also unpersuasive. She signed a settlement agreement and a copy of that was in the record by March 9, 2021. This alone provides sufficient confirmation of the claim's existence.

Sievert should not benefit from her failure to satisfy her duty of disclosure. She is not entitled, under the facts here, to amend her exemptions. Permitting her to do so would undermine the integrity of the bankruptcy system by permitting her to "deliberately change position according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. at 749-50.

### CONCLUSION

Federal Rule of Bankruptcy Procedure 1009(a) provides that the liberal right to file amendments to schedules ends once a case is closed. As a result, a debtor seeking to amend schedules in a reopened case must request and establish cause for extending the time to do so under Federal Rule of Bankruptcy Procedure 9006(b)(1). Because Sievert neither asked for an extension of time to file her Amended Schedule C nor attempted to show excusable neglect for failing to disclose the asset or to file the Amended Schedule C before the case had closed, the Trustee's Objection must be sustained.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: October 27, 2021

                              BY THE COURT:

                              Hon. Catherine J. Furay
                              U.S. Bankruptcy Judge